CALUMET FOUNDRY AND MACHINE COMPANY *v.* MROZ.

[No. 11,420. Filed December 15, 1922. Rehearing denied February 15, 1923.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Measure of Compensation.—Loss by One-Eyed Workman of Remaining Eye.*—Where an employe has suffered a previous total loss of one eye, and thereafter, whether in the same or another employment, he sustains a total loss of the other eye, and the blindness resulting therefrom occasions permanent total disability, he is entitled to compensation under the Workmen's Compensation Act, §31, cl. d, (Acts 1919 p. 158, §8020o1 Burns' Supp. 1921) for such total disability, subject to the reduction provided in §35 of the act (Acts 1915 p. 392, §80201 *et seq.* Burns 1914), if the loss of both eyes occurs in the same employment, notwithstanding the provisions of §33 of the act, which relates only to permanent partial injuries. p. 310.

2. STATUTES.—*Construction.—Adoption of Part of Another Statute.*—When a statute adopts part or all of another statute by a specific and descriptive reference thereto, such adoption takes the statute as it exists àt the time of adoption, and subsequent additions or modifications of the adopted statute has no effect upon the adopting statute, in the absence of an expressed intent to the contrary. p. 315.

Calumet, etc., Machine Co. *v.* Mroz—79 Ind. App. 305.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.— Finding of Permanent Total Disability.—Sufficiency.*—In a proceedings for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns 1914), a finding that an employe claiming compensation for blindness "has been totally disabled since such injury" *·held* not equivalent to a finding that he suffered total permanent disability. pp. 316, 318.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.— Failure to Find Essential Fact.—Effect.*—The failure of the Industrial Board to find an essential fact is equivalent to a finding against the party having the burden of establishing that fact. p. 318.

5. MASTER AND SERVANT.—*Workmen's Compensation Act.— Appeal.—Review.—Award.—Findings.*—A finding by the Industrial Board may not be disregarded and direct resort had to the evidence in order either to sustain or overthrow the ·award based upon such finding. p. 318.

6. MASTER AND SERVANT.—*Workmen's Compensation Act.— Finding.—Primary and Ultimate Facts.*—In making an award the Industrial Board can only consider the ultimate facts found and such inferences as are impelled by the primary facts stated in the finding. p. 318.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by John Mroz against the Calumet Foundry and Machine Company. From an award for applicant, the defendant appeals. *Reversed.*

*Turner, Adams, Merrell & Locke* and *Paul E. Beam,* for appellant.

*C. B. Tinkham,* for appellee.

NICHOLS, C. J.—This is an appeal from an award of the full Industrial Board entered on February 28, 1922, in a proceeding brought by appellee under the provisions of the Indiana Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921), in which appellee made claim for compensation on account of an injury by accident sustained on January 4, 1921.

The full Board found that on January 4, 1921, appel-

lee was in the employment of appellant at an average weekly wage of $40; that on said date he received a personal injury by an accident arising out of and in the course of his employment as the result of which the vision of his right eye was permanently reduced to less than ten per cent. of normal vision; that the vision thereof was permanently reduced to light perception only; that about seventeen years prior to the time that appellee entered the employment of appellant the vision of his left eye was permanently destroyed so that by the injury of January 4, 1921, appellee has been totally blind with the exception of mere light perception in the right eye; that by reason of said blindness he has been totally disabled since said injury; that appellant had actual knowledge of appellee's injury on January 4, 1921; that on February 22, 1921, appellee and appellant executed a written compensation agreement whereby the appellant agreed to pay to the appellee compensation at the rate of $13.20 per week, beginning with the eighth day of disability after his injury and to continue during total disability, which agreement was approved by the Industrial Board on February 23, 1921; that under said agreement the appellant had paid to appellee up to date of the original hearing 49 weeks' compensation. On this finding a majority of the Industrial Board awarded appellee 350 weeks' compensation at the rate of $13.20 per week, beginning on January 12, 1921, and further ordered that appellant have a credit on this award for all compensation theretofore paid.

Appellant does not question the sufficiency of the evidence to support the findings of fact by the Industrial Board, but contends that under the facts as found by the Board the award is contrary to the provision of the Indiana Workmen's Compensation Act which under subdivision "f" of §31 (Acts 1919 p. 158, §8020o1 Burns' Supp. 1921) allows 150 weeks' compensation for

the permanent loss of the sight of an eye or its reduction to one-tenth of normal vision with glasses.

Under this provision, which appellant says needs no construction and can mean but one thing, it contends that appellee was entitled to compensation for 150 weeks and no more, while appellee contends that under the facts found he is entitled to 500 weeks' compensation under subdivision "d" of §31 (Acts 1919 p. 158, *supra*) which provides compensation for injuries resulting in total permanent disability, or under subdivision "h" of §31 (Acts 1919 p. 158, *supra*) which provides compensation in all other cases of permanent partial impairment than those mentioned in other subdivisions of the section (none of which can include the injury here involved), the same to be proportionate to the degree of such impairment in the discretion of the Industrial Board, not to exceed 500 weeks.

We proceed to give these provisions of the Compensation Act (Acts 1915 p. 392, *supra*) consideration in view of other provisions of the Act, and of the circumstances of this case as disclosed by the finding. It will be observed that under §35 of the Compensation Act (Acts 1915 p. 392, *supra*) an employe who lost both eyes, one in each of two separate accidents, in the same employment would be entitled to compensation for 500 weeks. The writer of this opinion assumes in this case that the previous permanent injury together with the subsequent permanent injury resulted in permanent total disability, for it is apparent from the language of subdivision "f" of §31 (Acts 1919 p. 158, *supra*) that the legislature regarded the reduction of the sight of an eye to one-tenth of normal vision with glasses the same in effect as its total loss. If such total disability were sustained as a result of two separate accidents in different employments, the employe would receive compensation for only 300 weeks, if appellant's contention is to prevail. This is upon the

assumption that the employe had previously received 150 weeks for the loss of one eye, and that in this employment, having lost one eye only, he would receive compensation for 150 weeks, making a total of 300 weeks. It is apparent that this would be an injustice to such employe when we consider the provision made in §35 (Acts 1915 p. 392, *supra*) for an employe losing both eyes in the same employment, which we must presume that the legislature did not intend, and one which we must avoid if we can do so by a reasonable and liberal construction of the act in favor of just compensation for the injured employe.

When appellee entered the service of appellant he had lost one eye, but there yet remained a degree of capacity which enabled him to perform the service for which he was hired, and for which we must assume that compensation was paid him in proportion to his capacity so to perform, and that upon this earning capacity, measured by the compensation that was paid to him, we must base his right to recover in this case. He was as much an employe in his limited capacity, with his correspondingly limited compensation therefor as he would have been had he been possessed with the perfect sight of both eyes, and his previous impairment should not be taken into account in determining the amount of compensation to which he is entitled by reason of the injury received while in appellant's employ. Only the result of such injury to the employe in his then physical condition without reference to his previous diasbility should be considered. *In re Branconnier's Case* (1916), 223 Mass. 273, 111 N. E. 792; *Schwab* v. *Emporium Forestry Co.* (1915), 153 N. Y. Supp. 234, 167 App. Div. 614; *Keyworth* v. *Atlantic Mills Co.* (1919), 42 R. I. 391, 108 Atl. 81, note 8 A. L. R. p. 1336; *Kriegbaum* v. *Buffalo Wire Works Co.* (1918), 169 N. Y. Supp. 307, 182 App. Div. 448.

We are fully aware that by this construction such second injury, when added to the previous injury, if it results in a total permanent disability to the injured employe, gives him compensation for 500 weeks, and that, if he had theretofore in another employment received compensation for previous injury, which, for illustration, let us say, was the loss of an eye, such employe would thereby receive a total compensation of 650 weeks, but such a possible result should not deter us from giving a just compensation under the rule of liberal construction in favor of an injured employe who is totally and permanently disabled by reason of such second injury. It must be kept in mind that the compensation for a permanent total disability resulting because of the second injury following a previous permanent injury, measured by his limited earning capacity resulting in lower wages, may not be as great as it would be had there been no previous impairment.

We reach the conclusion then that where there has been a previous total loss of one eye and that thereafter, whether in the same or another employment,

1. there is a total loss of the other eye, and the blindness resulting therefrom occasions permanent total disability, there should be a recovery for such total disability under subdivision "d" of §31 of the Compensation Act (Acts 1919 p. 158, *supra*) subject, however, to the deduction provided in said §35 (Acts 1915 p. 392, *supra*), if the loss of both eyes occurs in the same employment. We have reached this conclusion by a careful study of the provisions of the Workmen's Compensation Act (Acts 1915 p. 392, *supra*), giving the same a liberal construction in the light of principles of equity and justice in favor of the injured employe. Having reached this conclusion, we are confirmed therein by the decisions of other states under the provisions of

Workmen's Compensation Acts substantially similar to our own.

In *Fair* v. *Hartford Rubber Works Co.* (1920), 95 Conn. 350, 111 Atl. 193, an employe who had previously lost the sight of his left eye was injured in his right eye so that he was rendered permanently and totally blind and it was held that he was entitled to an award for total, permanent disability. The court, citing *Hartz* v. *Hartford Faience Co.* (1916), 90 Conn. 539, 97 Atl. 1020, says: "It is of no consequence that the total incapacity of this plaintiff is in part due to the fact that he had already lost one eye before suffering the injury in question; the right to compensation depends in each case on the extent to which the claimant is in fact incapacitated by the injury."

In *Combination, etc., Co.* v. *Court of Common Pleas* (1921), (N. J.) 115 Atl. 138, a workman having already lost one eye at the time of entering his employment sustained an accident in the course of his employment causing the loss of his remaining eye, thereby rendering him totally blind, and it was held that an award for total and permanent disability was justified, under the Workmen's Compensation Law, with provisions substantially the same as ours, the court saying that "as a remedial act which should be liberally construed; and, applying this rule, we are clear that as respects major injuries, like the loss of an eye, an arm, or a leg, the Legislature was dealing with a situation in which the other eye, arm, or leg would still be available."

In *Brooks* v. *Peerless Oil Co.* (1920), 146 La. 383, 83 So. 663, it was held that an injury to a laborer's only eye so affecting his vision as to incapacitate him for the work he has been doing and rendering his ability to do any remunerative labor more than doubtful, constitutes permanent, total disability within the Employers' Lia-

bility Act of that state. The court says: "The rationale of these Employers' Liability Acts is that the employment in which the workman has been disabled owes him a living, and it stands to reason that the workman is as totally disabled from work by the loss of one eye as by the loss of two, if he had but one, and by the impairment of the sight as much as by the loss of it, if the impairment be to such a degree as to disable entirely from work. In speaking of the workman being partially disabled by the loss of one eye, one arm, or one foot, this Employers' Liability Act has reference evidently to a normal man, having both eyes, arms or feet."

In *Guderian* v. *Sterling Sugar & R. Co.* (1922), 151 La. 59, 91 So. 546, it was held that one losing his only eye which disabled him from doing remunerative work of any reasonable character will be awarded compensation as for permanent total disability.

In *Jennings* v. *Mason City S. P.* (1919), 187 Iowa 967, 174 N. W. 785, it was contended by appellant that the Workmen's Compensation Act fixed the compensation for the loss of an eye regardless of whether such loss resulted in total or only partial disability. But the court held that loss of the employe's only eye constitutes a total permanent disability with compensation accordingly. In that case it appears that the commissioner deducted from the allowance for total disability the compensation value of the first loss of an eye deeming that as a partial disability, and the court says that—"it was an effort on the part of the commissioner at attaining equity, and worked no prejudice to the appellant." In the instant case, an allowance was made by the Industrial Board of compensation for 350 weeks which is 150 weeks less than compensation for total permanent disability. As 150 weeks is the compensation for the loss of one eye, it seems that the Industrial Board may have used the same process as in the case above in reaching

the amount of compensation to be allowed. However, we do not need to determine as to this method of reaching the result. Appellant cannot complain of a reduction of 150 weeks' compensation and appellee has not assigned cross-error.

In *Industrial Commission* v. *State Ins. Compensation Fund* (1922), (Colo.) 203 Pac. 215, it was held, in view of the liberal construction of the Workmen's Compensation Act adopted by the court, and evident purpose and intent of the act which is held to be highly remedial and beneficent in its nature, that where an employe was substantially blind in one eye, but was able to perform his duties and earn his compensation, an injury in the course of his employment which destroyed the sight of his good eye, and which induced him, at the suggestion of the State Compensation Fund, to undergo an operation to improve the sight of the other eye, resulting total loss of his sight of that eye, was the cause of the employe's total permanent disability, and entitled him to compensation for such disability.

In *Schwab* v. *Emporium Forestry Co., supra,* it was held that a workman who, having previously lost one hand, lost the other as a result of an accident in his employment, is entitled to compensation for total disability under the Workmen's Compensation Law, the court holding that the claimant by the accident had lost all the ability he had of earning a living, and that the disability was therefore total, and further that his wages evidently being based upon the fact that he was previously partially disabled, the compensation to be awarded him should be based upon such figures.

In Branconnier's case, *supra,* the claimant lost one of his eyes five years prior to an injury received in the course of his employment by which the sight of his remaining eye was destroyed. The question was whether as a matter of law the loss of his remaining eye in the

later accident was the cause of total disability, and it was there held that the claimant was entitled to compensation for a total incapacity for work, as such result came to him through the injury. The court says: "The total capacity of this employe was not so great as it would have been if he had had two sound eyes. His total capacity was thus only a part of the normal man. But that capacity, which was all he had, has been transformed into a total incapacity by reason of the injury. That result has come to him entirely through the injury."

In *Wabash R. Co.* v. *Industrial Comm.* (1918), 286 Ill. 194, 121 N. E. 569, the employe previous to his employment had lost his left arm, and after his employment had lost his left leg. Under the statute which provides that the loss of both hands or both arms, both feet or both legs, both eyes, or any two of them shall constitute total permanent disability, the plaintiff in error contended that the loss of one leg did not constitute total permanent disability, while the defendant in error contended that the loss of the leg combined with the previous loss of the arm constituted total permanent disability, and the court held that there was a total permanent disability for which compensation should be made. The court says: "He was employed to do work which could be performed by a man having but one arm, and he was paid on that basis. By the loss of his leg such capacity as he had for work was entirely destroyed, and under the provision of the act he was entitled to compensation for total permanent disability."

In *Heaps* v. *Industrial Commission* (1922), 303 Ill. 443, 135 N. E. 742, it was held that, where an employe, blind in one eye, was injured so that the other eye remained closed except when opened by artificial means, in which case it had only 12/200 vision, amounting practically to blindness, which condition made it impossible

for him to work, he was entitled to compensation under the Workmen's Compensation Act for total permanent disability, having sustained a permanent loss of the use of both eyes, within the meaning of the Act, the court saying: "It is now a well established rule in this State and other States that where an employe who previous to his employment has lost an eye loses the other eye as the result of an injury   *   *   *   in the course of his employment, he is entitled to compensation for total permanent disability."

Appellant contends that, by the provisions of §33 of the act of 1915, Acts 1915 p. 392, *supra,* previous injuries in other employments are excluded from consideration in determining the amount of compensation in subsequent injuries such as specified in §31 of the act (Act 1919 p. 158, *supra*). This exclusion however, related only to the permanent partial injuries, as those were the only kind of injuries mentioned in §31 of the act of 1915 (Acts 1915 p. 392), and which by reference are included in the provisions of §33. Section 31 (Acts 1915 p. 392) has since been amended, and the provisions of §33 (Acts 1915 p. 3C2, *supra*) do not apply to total permanent disabilities mentioned in §31 as amended. Acts 1919 p. 158, *supra.*

It is the general rule, that when a statute adopts a part or all of another statute by a specific and descriptive reference thereto, such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute unless it does so by express intent. *State* v. *Leich* (1906), 166 Ind. 680, 78 N. E. 189, 9 Ann. Cas. 302; *Pittsburgh, etc., R. Co.* v. *James* (1917), 64 Ind. App. 456, 114 N. E. 833; 36 Cyc 1152; *State* v. *Caseday* (1911), 58 Ore. 429, 115 Pac. 287; *Crohn* v. *Telephone Co.* (1908), 131 Mo. App. 313, 109 S. W. 1068; *Culver* v. *The People* (1896), 161 Ill. 89, 43

N. E. 812; *Skelton* v. *Newberg* (1915), 76 Ore. 126, 148 Pac. 53; *Hutto* v. *Walker County* (1913), 185 Ala. 505, 64 So. 313, Ann. Cas. 1916B 372 and note; *Vallejo, etc., R. Co.* v. *Reed Orchard* (1918), 177 Cal. 249, 170 Pac. 426; *State* v. *Ganong* (1919), 93 Ore. 440, 184 Pac. 233; *Darmstaetter* v. *Moloney* (1881), 45 Mich. 621, 8 N. W. 574; *Schlaudecker* v. *Marshall* (1872), 72 Pa. 200; *United States* v. *Paul* (1832), 6 Pet. 141, 8 L. Ed. 348; *Kendall* v. *United States* (1838), 12 Pet. 524, 9 L. Ed. 1181; *Nunes* v. *Wellisch* (1876), 12 Bush (Ky.) 363; *In re Main St.* (1885), 98 N. Y. 454; *State* v. *Davis* (1870), 22 La. Ann. 77. The same rule would evidently apply where one section is made a part of another section in the same act by specific reference, as was done in this case. That §33, Acts 1915 p. 392, *supra,* has no reference to total permanent disabilities is apparent from the fact that total permanent disabilities were not mentioned in §31 as originally enacted (Acts 1915 p. 392), but were mentioned separately in §29 (Acts 1917 p. 227, §8020m1 Burns' Supp. 1921) to which no reference is made in said §33, Acts 1915 p. 392, *supra.*

We do not need to discuss the provisions of subdivision "h" aforesaid, for the reason that we are convinced that the Industrial Board, with subdivision "f," Acts 1919 p. 158, §31, *supra,* before it, did not consider that appellee's injuries resulted in permanent partial disability.

The majority of the court holds that the findings of the Industrial Board do not show a permanent total disability and that the same is true with reference to the case of *Stevens* v. *Marion Foundry, etc., Co.,* 77 Ind. App. 28, 133 N. E. 23, cited by appellant and relied upon by it as a case sustaining its contention. That it was not found by the Industrial Board that the injuries of appellee resulted in total permanent disability but only that he "has been totally

disabled since such injury," or, in other words, that his total disability existed to the time of making the finding, leaving his further disability undetermined. That as a substitute for such finding primary facts might have been found that would impel an inference that appellee's injuries have resulted in total permanent disability but that this was not done. That while it is stated in the finding that about seventeen years prior to the time that appellee entered the employment of appellant, the vision of his left eye was permanently destroyed; and that as a result of the injuries which he received while in appellant's employ "the vision of his right eye was permanently reduced to less than ten per cent. of normal vision," there is no finding as to how much the reduction of vision of the right eye would be if glasses were used, so that the court cannot say that the injuries to such eye are equivalent to a permanent loss of its vision as is implied in subdivision "f" of §31, Acts 1919 p. 158, *supra.* That, for aught the court knows from anything found, the use of glasses might have so far increased appellee's vision in said right eye as that its loss of sight would not be more than fifty per cent., and there may have been evidence in this regard that caused the Board to find merely that appellee "has been totally disabled since his injury," and not that his injuries resulted in total permanent disability, and that for the reason stated the inference necessary to supplement the facts found in order to entitle appellee to 500 weeks' compensation under subdivision "d" of said §31, Acts 1919 p. 158, *supra,* cannot be said to be impelled by the primary facts found.

Approving the Stevens case, *supra,* the majority of the court holds that a finding that the workman's injury was received on February 6, 1919, and that it resulted in the total permanent loss of the vision of his left eye, and that approximately thirty years prior to

February 6, 1919, he had permanently lost the entire vision of his right eye, is not equivalent to a finding that he was permanently and totally disabled; and that such an express finding of fact being essential to his right to recover, the burden was upon him to establish it; and that the finding failing so to state was equivalent to a finding against him in that essential particular unless primary facts were found which forced such an inference. This principle of law is sustained by the following authorities. *Raynes* v. *Staats-Raynes Co.* (1918), 68 Ind. App. 37, 119 N. E. 809; *Chicago, etc., R. Co.* v. *Kaufman,* 78 Ind. App. 474, 133 N. E. 399; *S. J. Peabody, etc., Co.* v. *Miller,* 77 Ind. App. 251, 133 N. E. 591.

4.

The majority of the court holds that, while it is no doubt true that loss of vision in both eyes usually results in permanent total disability, and the evidence will usually warrant the Board in so finding, the court would not be justified in holding that such disability necessarily follows in view of the fact that some persons, totally blind, are able to engage in some kinds of employment, although less efficiently, it may be, and for which they receive reduced compensation. So reasoning the court holds that the decision of the Stevens case is not in conflict with the decision in the instant case.

3.

The writer of this opinion, however, is not in harmony with the majority of the court with reference to what is required in an Industrial Board's finding to constitute a finding of total permanent disability. It is, of course, the law that in order to uphold a given award the finding of the Industrial Board must be sustained by sufficient evidence and the award must be sustained by the finding, otherwise it would be subject to reversal on appeal, under an assignment of errors, "That the award of the full board is contrary

5, 6.

to law." §8020s2 Burns' Supp. 1921, Acts 1917 p. 154. The evidence can have no effect on the award except through the finding of fact, in other words, the finding may not be disregarded and direct resort had to the evidence in order either to sustain or overthrow the award. Expressions may be found which indicate the contrary but they have evidently been used without being well considered. But the Board, in making its finding, may supplement the facts proven and circumstances shown, by any reasonable inference of which they are susceptible. *Haskell, etc., Car Co.* v. *Brown* (1917), 67 Ind. App. 178, 117 N. E. 555; *Nordyke, etc., Co.* v. *Swift* (1919), 71 Ind. App. 176, 123 N. E. 449. It is the law that in making its award the board can only consider the ultimate facts found and such inferences as are impelled by the primary facts stated in the finding. *Smith, Trustee* v. *Wells Manufacturing Co.* (1897), 148 Ind. 333, 46 N. E. 1000; *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 180 N. E. 629, 14 L. R. A. (N. S.) 483; *Hoosier Veneer Co.* v. *Stewart,* 76 Ind. App. 1, 129 N. E. 246; *State* v. *Amer. Ins. Co., ante* 88, 137 N. E. 338.

But that workmen's compensation acts such as we have in this state are the outgrowth of technicalities, abuses and errors which hindered and sometimes prevented just compensation to injured employes and their dependents is generally recognized. That the Compensation Act of this state is remedial in character, and that it should be liberally construed to this end, even to the inclusion of cases within the reason although outside the letter of the statute, has been decided by this court. *In re Duncan* (1920), 73 Ind. App. 270, 127 N. E. 291. Its humane and beneficent purpose should not be frustrated by technical, cold-hearted construction against the injured workman. It is the spirit of the act that the loss resulting from the injury should be

borne by the industry in which it occurred, not by the injured employe, his dependents or the public. In harmony with this spirit, and in harmony with the spirit of the cases quoted above it is the opinion of the writer that when appellee, having previously lost the sight of one eye, lost his remaining eye in this employment, or had its vision reduced to light perception only, he thereby suffered an injury which by reasonable inference and in view of the humane purposes of the Workmen's Compensation Act, Acts 1915 p. 392, *supra,* and the evident legislative intent in passing it, resulted in total permanent disability within the spirit of the act and that by reasonable construction we should hold that the Industrial Board has so found, and that compensation therefor should be governed by subdivision "d" of §31 of the Compensation Act, Acts 1919 p. 158, *supra,* and that the Stevens case cannot in that regard be distinguished from the instant case, and that it should be overruled. The writer is of the opinion that under the facts in this case appellee should have received compensation for 500 weeks instead of for 350 weeks, but that as aforesaid, as appellee has failed to assign cross-error he must be limited to the 350 weeks awarded less the number of weeks for which compensation has been paid.

The majority of the court are in accord with this compensation for total permanent disability but being of the opinion that the finding of the Industrial Board does not show a *permanent* total disability, holds that in the absence of a finding of permanent total disability there is no basis for an award either of 350 or 500 weeks compensation, and that such an award is therefore contrary to law.

The cause is therefore reversed, for further proceedings.

Dausman, J., and Remy, P. J., concur in result.